IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASHLEY W.,[1]

        Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner, Social Security
Administration,

        Defendant.

Case No. 3:20-cv-00823-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

    Plaintiff Ashley W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for child's disability and supplemental security income benefits pursuant to the Social Security Act ("Act"). For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings.

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## PROCEDURAL BACKGROUND

On March 7, 2017, plaintiff filed an application for supplemental security income benefits. Tr. 77. On April 7, 2017, plaintiff applied for child's insurance benefits based on disability. Tr. 76. In both applications, plaintiff alleged disability beginning March 7, 1999. Tr. 215-18, 224-25. The Social Security Administration ("SSA") denied plaintiff's application on August 24, 2017 and again on reconsideration on December 7, 2017. Tr. 139, 144-46, 152, 155. On January 8, 2019, after a hearing before an Administrative Law Judge ("ALJ") where plaintiff was represented by counsel, and a vocational expert ("VE") testified, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-22, 40-75. On May 31, 2019, plaintiff appealed the ALJ's decision. Tr. 209-12. On April 2, 2020, the SSA Appeals Council denied plaintiff's appeal. Tr. 1-3. On May 22, 2020, plaintiff filed a complaint in this Court.

## FACTUAL BACKGROUND

Plaintiff was born on March 7, 1999 with methamphetamines in her system. Tr. 215, 654. Plaintiff suffers from a neurological disorder associated with prenatal substance exposure. Tr. 658. Plaintiff also suffers from major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), a panic disorder, irritable bowel syndrome, and acid reflux. Tr. 15-16, 45, 655, 1238, 1374, 1520, 1524. Plaintiff lives with her adopted mother, uncle, and six animals. Tr. 46. Plaintiff has a modified high school diploma and has worked jobs in retail, logistics, and animal boarding. Tr. 47-49.

## STANDARD OF REVIEW

The Court must uphold the Commissioner's decision unless the decision "contains legal error or is not supported by substantial evidence." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). Substantial evidence

"is more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (citation omitted); *Ford*, 950 F.3d at 1154 (citing *id.*). The court applying the substantial-evidence standard "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 139 S.Ct. at 1154 (citation and internal quotation marks omitted).

Judicial review of the Commissioner's decision is limited and "extremely deferential." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1198 (9th Cir. 2014). This degree of deference is warranted because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2017) (citation and internal quotation marks omitted). The ALJ is responsible for determining the credibility of the claimant's symptom testimony, resolving conflicts in medical testimony, and making findings. *Ford*, 950 F.3d at 1149 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Treichler*, 775 F.3d at 1098 ("Commissioner's findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.") (quoting 42 U.S.C. § 405(g)). The court should uphold the ALJ decision "[w]here evidence is susceptible to more than one rational interpretation[.]" *Trevizo*, 871 F.3d at 674-75 (9th Cir. 2017) (citing *Orn v. Astrue*, 495 F.3d at 625, 630 (9th Cir. 2007)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (same).

## THE ALJ'S FINDINGS

The ALJ's denial of plaintiff's applications relied on the application of medical regulations as they existed prior to March 27, 2017.[2] Tr. 21-22.

For SSA benefits claims, the definition of disability and the five-step analysis of whether a person is disabled are set forth in 42 U.S.C. § 423(d), and 20 C.F.R. §§ 404.1520 and 416.920.[3] *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also Ford* 950 F.3d at 1148-49. Each step of the sequential analysis is dispositive. In other words, if the ALJ finds that a claimant is not disabled at any step, the sequential process ends, and the claim is denied. The claimant and the ALJ share the burden of proof at steps one through four. At step five, the burden shifts to the Agency. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

At step one of the sequential evaluation process, the ALJ found that, since the alleged disability onset date, plaintiff had not engaged in substantial gainful activity. The ALJ noted that plaintiff worked part-time between 2017 and 2018 but that work activity did not rise to the level of substantial gainful activity. Tr 15.

At step two, the ALJ found that the plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, ADHD, and PTSD. The ALJ reportedly considered all other mental complaints in the record, including a neurodevelopmental disorder and a panic disorder with mild agoraphobia, but found the "severe" mental impairments best

---

[2] The SSA medical regulations substantially changed as of March 27, 2017. The relevant effective date is when the claimant initially filed a disability claim: before March 27, 2017, the old rules apply; on or after March 27, 2017, the new medical rules apply.

[3] The sequential evaluation process is a series of five "steps" that the SSA follows in a set order. At step one, the SSA considers whether the claimant's work activity, if any, constitutes substantial gainful activity. At step two, the SSA considers the medical severity of the claimant's impairment(s) to determine if the claimant has a severe medically determinable physical or mental impairment. At step three, the SSA considers whether the claimant's impairment(s) meets or equals one of the listed impairments sufficient for a disability determination. Between step three and step four, the SSA assesses the claimant's residual functional capacity. At step four, the SSA considers its assessment of the claimant's residual functional capacity and past relevant work. At step five, the SSA considers whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4).

represent the plaintiff's condition for the relevant period. The ALJ also noted that the record revealed plaintiff's history of cannabis dependence. The ALJ found plaintiff's cannabis use had no more than a "mild functional impact," and was thus non-severe, but nonetheless created difficulty for medical providers when diagnosing plaintiff. Finally, the ALJ observed that plaintiff's physical impairments have largely been under control with treatment and dietary changes during the relevant time. The ALJ found these conditions non-severe because related symptoms "appeared transient, short-lived" and noted that this finding was consistent with medical opinions in the record. Tr. 15-16.

At step three, the ALJ found that plaintiff's impairment or combination of impairments was not of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff has, at most, a moderate limitation in the following areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. Tr. 16-17.

Next, the ALJ found plaintiff has the residual functional capacity ("RFC") to perform simple, routine tasks with a reasoning level of 1 or 2 with no public contact and occasional contact with a small group of coworkers. The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ reportedly considered the medical opinions and prior administrative medical findings regarding plaintiff's claims. The ALJ found the medical opinion of state agency reviewing psychological consultant, Dr. Ben Kessler, Psy.D., most persuasive. Tr. 19. The ALJ found the

opinion of plaintiff's treating mental health provider, Nurse Stacy Hartline, PMHNP, unpersuasive. Tr. 20.

At step four, the ALJ found plaintiff had no past relevant work. Tr. 20.

At step five, the ALJ found that after considering plaintiff's age, education, work experience, and RFC, plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, the ALJ concluded that a finding of "not disabled" is appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. Tr. 20-21.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly assessing the medical opinion evidence, resulting in a failure to include in the RFC a limitation that plaintiff would need extra breaks throughout the workday; and (2) failing to establish that there are a significant number of jobs in the national economy that plaintiff can perform with her impairments and limitations. Pl.'s Opening Brief at 6-16 (doc. 31).

### I. The ALJ Reasonably Considered the Medical Evidence and Opinions

The ALJ discussed the opinions of two medical sources: the non-examining consultant, Dr. Kessler, and plaintiff's treating mental health provider, Nurse Hartline. Tr. 17-20. Both Dr. Kessler and Nurse Hartline opined that plaintiff has limitations that impede her ability to work. But only Nurse Hartline's opinion stated that plaintiff would need extra breaks, "as frequently as hourly, depending on level of anxiety," and that plaintiff would possibly miss "8-12 hours [of work] per month" due to mental health symptoms. Tr. 1376-77.

In considering the medical opinions, the ALJ relied on the old medical regulations because the new regulations apply only to claims filed on or after March 27, 2017. Tr. 17 (citing

Page 6 – OPINION & ORDER

20 C.F.R. §§ 404.1527, 416.927). Plaintiff filed her child's insurance claim on April 7, 2017 and her supplemental security income benefits claim on March 7, 2017. Tr. 76, 77. However, when a claimant files concurrent claims, the SSA generally uses the earlier date to determine which regulations to apply.[4] Accordingly, the ALJ appropriately considered plaintiff's applications pursuant to the regulations as they existed.

The ALJ's decision includes certain language from the new medical regulations.[5] And given the plaintiff's application dates near the March 27, 2017 cutoff, there was some understandable confusion among the parties as to which regulations applied. But, as explained below, the ALJ reasonably considered the medical evidence and opinions under either set of medical regulations.

Under the old medical regulations, only opinions from acceptable medical sources are relied on as "medical opinions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Nurse practitioners, including Nurse Hartline, are not acceptable medical sources under the old regulations. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Accordingly, the ALJ reviewed Nurse Hartline's opinion as one "from medical sources who are not acceptable medical sources." 20 C.F.R. §§ 404.1527(f), 416.927(f). Opinions from acceptable and non-acceptable medical sources are evaluated using the same factors listed in 20 C.F.R. § 404.1527(c)(1) through (c)(6). Here, the old medical regulations required the ALJ to (1) consider the opinion of Nurse Hartline, and (2) explain how much weight she gave to Nurse Hartline's opinion in a manner sufficient to "allow[] a claimant

---

[4] Determining the Filing Date for Evaluating Evidence, SSA, POMS DI 24503.050, available at https://secure.ssa.gov/poms.Nsf/lnx/0424503050.
[5] Specifically, the ALJ decision includes the following: "As for medical opinions and prior administrative medical findings, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources." Tr. 19. This language closely mirrors the language found in the new medical regulations. *See* 20 C.F.R.§ 404.1520c.

Page 7 – OPINION & ORDER

or subsequent reviewer to follow the adjudicator's reasoning" Tr. 19, 20; 20 C.F.R. §§ 404.1527(f), 416.927(f).

Under the old medical regulations, an ALJ may reject the testimony of a non-acceptable medical source by providing reasons germane to that witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Germane reasons must be more than (1) the claimant's personal relationship with the lay witness, or (2) lack of medical evidentiary support, i.e., the "overall medical evidence." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing *Bruce*, 557 F.3d at 1116)). But the lack of objective medical evidence alone may be sufficient to reject a medical opinion because an ALJ may reject a medical source opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Ford*, 941 F.3d at 1154 (quoting *Thomas*, 278 F.3d at 957); *Coleman v. Saul*, 979 F.3d 751 (9th Cir. 2020); *see* 20 C.F.R. §§ 404.14527(c)(3), 416.927(c)(3).

Here, the ALJ found Nurse Hartline's opinion unpersuasive for three reasons. First, the ALJ was dissatisfied with the "cursory explanation" provided in Nurse Hartline's opinion. Specifically, the ALJ noted that Nurse Hartline's entire explanation for her opinion was "observation [and] history." Second, the ALJ found inconsistencies in Nurse Hartline's opinion as to the severity of plaintiff's health issues. Third, the ALJ found those inconsistencies included evidence the plaintiff "did well with treatment." Tr. 20, 1374-77. Taken together, the ALJ gave germane reasons for her dismissal of Nurse Hartline's opinion.

Under the new medical regulations, Nurse Hartline's opinion as nurse practitioner would qualify as a medical opinion from an acceptable medical source. 20 C.F.R. §§ 404.1502(a), 416.902(a). Under this scenario, the ALJ would need to give "specific and legitimate" reasons for rejecting Nurse Hartline's opinion. *Trevizo*, 871 F.3d at 675 (quoting *Bayliss v. Barnhart*,

427 F.3d 1211, 1216 (9th Cir. 2005)). Medical opinions from Disability Determination Services do not alone constitute substantial evidence for such reasoning. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)). Nevertheless, such opinions are substantial evidence when they are supported by other consistent evidence in the record which contradicts the treating or examining medical opinion at issue. *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999).

Here, reviewing consultant Dr. Kessler opined that plaintiff's ability to complete a normal workday/workweek was not significantly limited. Tr. 19, 119. The plaintiff's own testimony also supports the proposition that she "could work full time" if allowed scheduling flexibility. Tr. 50. Further, Nurse Hartline's treatment notes contain contradicting evidence. For example, in the same document, Nurse Hartline noted that plaintiff was "improving in function" yet marked plaintiff's condition as "worsening." Tr. 1247. Nurse Hartline's records also indicate plaintiff's anxiety is manageable, tr. 1235, plaintiff has "long-standing stability on medication," tr. 1238, and plaintiff worked 20-30 hours a week and tolerated full shifts with no missed days. Tr. 1245, 1249. *See Baker v. Saul*, 836 F. App'x 526, 529 (9th Cir. 2020) (noting that claimant's favorable response to treatment justified an ALJ's rejection of an inconsistent medical opinion); *Tommasetti*, 533 F.3d at 1041 (explaining that incongruity between a medical provider's questionnaire responses and her medical records provides a specific and legitimate reason for an ALJ to reject that medical opinion). Thus, even assuming Nurse Hartline was an acceptable medical source, the ALJ did not err in rejecting her opinion.

Finally, the ALJ's rejection of Nurse Hartline's opinion undermines plaintiff's primary basis for arguing that the RFC should have included a limitation that plaintiff needs extra breaks throughout the workday. The ALJ's finding must include only those limitations the ALJ found

Page 9 – OPINION & ORDER

credible and supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217. The ALJ pointed to substantial evidence, including plaintiff's testimony and part-time work history, to support the conclusion that plaintiff was not as limited as Nurse Hartline opined. Tr. 18-20. Nonetheless, because plaintiff's work record does not include full-time work, the Court is unable to determine whether the ALJ erred in her conclusions about plaintiff's disability status and ability to work. Because this case is remanded on other grounds, the parties may revisit Nurse Hartline's opinion upon remand if appropriate.

## II. The ALJ Failed to Consider Plaintiff's Rebuttal to the Vocational Expert's Testimony

Plaintiff contends the ALJ failed to establish there are a significant number of jobs in the national economy that plaintiff can perform with her impairments and limitations. The SSA bears this burden at step five of the evaluation process. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). Specifically, plaintiff argues the ALJ erred by failing to discuss the rebuttal evidence to the VE's job numbers estimates submitted by the plaintiff post-hearing. Tr. 359-76. The ALJ's decision contains no reference to or consideration of this rebuttal evidence. Tr. 20-21.

Defendant argues that plaintiff waived the ability to challenge the VE's testimony because plaintiff did not "raise the job-numbers issue in a general sense before the ALJ." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017). However, in *Shaibi,* the Ninth Circuit emphasized (1) the ALJ was best positioned to "evaluate and resolve any conflicting evidence concerning the number of jobs in relevant occupations," and (2) the plaintiff waived the right to challenge the VE testimony by failing to suggest at "any point during administrative proceedings" that the VE's job estimates were unreliable. *Id.* By contrast, the plaintiff here did submit rebuttal evidence in a post-hearing brief, addressed to the ALJ, during the administrative proceedings, that directly challenged the VE's testimony. Tr. 359-76.

Defendant also argues that in the Ninth Circuit, "the Commissioner [is] also under no obligation to sua sponte resolve a conflict between job numbers provided by [plaintiff] and the VE's testimony [if] the job numbers came from sources other than the Dictionary of Occupational Titles." *Shapiro v. Saul*, 833 Fed. App'x 695, 696 (9th Cir. 2021). However, the Ninth Circuit explained that

> "[a] claimant may challenge evidence on the ground that it conflicts with the DOT or the Medical-Vocational Guidelines, or on the ground that it differs from those provided by the County Business Patterns … or Occupational Outlook Handbook … The ALJ must consider the weight of such challenges as it makes its finding at step five. See *Shaibi*, 883 F.3d at 1110. Alternatively, a claimant may request to "submit supplemental briefing or interrogatories contrasting the [vocational expert]'s specific job estimates with estimates of the claimant's own." *Id*.

*Ford*, 950 F.3d at n. 14 (9th Cir. 2020). Here, plaintiff submitted vocational rebuttal evidence to challenge the VE's testimony regarding job number estimates and requirements for the jobs. This post-hearing brief consisted of information from the Occupational Outlook Handbook, the U.S. Bureau of Labor Statistics, the U.S. Census Bureau, SkillTRAN, and ONET. Tr. 359-76. Plaintiff directly asked the ALJ to reconsider the reliability of the VE's testimony and submitted that request along with relevant evidence.

The VE testified that plaintiff could perform the requirements of three representative occupations which cumulatively include more than 200,000 jobs nationally. Tr. 21. By contrast, plaintiff's rebuttal evidence indicates that there are fewer than 10,0000 jobs in the national economy that could be performed with plaintiff's limitations.[6] Tr. 360. The ALJ relied on the VE's testimony to conclude that plaintiff may perform work that exists in significant numbers in

---

[6] *See Watkins v. Comm'r Soc. Sec. Admin*., 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016) (11,000 jobs in the national economy does not represent a significant number).

Page 11 – OPINION & ORDER

the national economy. However, the ALJ's decision did not mention plaintiff's rebuttal evidence and failed to discuss plaintiff's challenge to the VE's testimony regarding job numbers.

Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency. *Treichler*, 775 F.3d at 1105. Here, the record is uncertain as to the number of jobs in the national economy that plaintiff can perform with her impairments and limitations. Accordingly, a remand is necessary to address this deficiency.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings.

DATED this 7th day of October, 2021.

_____/s/ Jolie A. Russo_____<br>
JOLIE A. RUSSO<br>
United States Magistrate Judge